IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY STEWART, | § | |
| | § | |
| Plaintiff and | § | |
| Counter-Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERNATIONAL ASSOCIATION OF | § | |
| MACHINISTS AND AEROSPACE | § | |
| WORKERS AND INTERNATIONAL | § | |
| ASSOCIATION OF MACHINISTS AND | § | CIVIL ACTION NO. H-13-1391 |
| AEROSPACE WORKERS, DISTRICT 19 | § | |
| | § | |
| Defendants and | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| DON E. HALL | § | |
| | § | |
| Counter-Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Plaintiff's Motion to Dismiss Counterclaims (Doc. 18), Counter-Defendant Don E. Hall's Motion to Dismiss (Doc. 24), and Defendants' Motion to Dismiss Title VII Retaliation Claim (Doc. 59). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motions be **DENIED**.

## I.  Case Background

Terry Stewart ("Stewart") filed this employment action against

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 27.

his union, the International Association of Machinists and Aerospace Workers ("IAM"), and District Lodge 19 ("District 19") of the IAM[2] alleging discrimination in violation of Title VII of the Civil Rights Act of 1964[3] ("Title VII") and 42 U.S.C. § 1981.

## A.   <u>Factual Background</u>

Stewart, an African-American man, works as a machinist for the Union Pacific Railroad ("Union Pacific") in Houston, Texas, and is represented for collective bargaining purposes by the IAM.[4]   In March 2005, Stewart was appointed to the position of Assistant Local Chairman of Local Lodge 2198 ("Lodge 2198"), a subordinate body of the IAM.[5]   Lodge 2198 is a subdivision of District 19.[6] District 19 is not a district in a geographical sense; rather, its membership is comprised of IAM members employed in the rail industry.[7]

In December 2006, Stewart was elected to the position of Lodge 2198 Local Chairman, to which he was reelected in December 2009.[8] As Local Chairman, Stewart's responsibilities included working with

---

[2]     Hereinafter, the court refers to IAM and District 19 collectively as the "Union."

[3]     42 U.S.C. §§ 2000e-2000e-17.

[4]     <u>See</u> Doc. 51, Pl.'s Am. Compl. p. 2; Doc. 59, Defs.' Mot. to Dismiss p. 1.

[5]     <u>See</u> Doc. 51, Pl.'s Am. Compl. p. 2.

[6]     <u>See</u> <u>id.</u>

[7]     <u>See</u> <u>id.</u>

[8]     <u>See</u> <u>id.</u>

the District 19 General Chairman to enforce the collective bargaining agreement by filing claims and grievances, distributing overtime, and settling disputes.[9]  In July 2010, Stewart submitted a letter to Joe Duncan ("Duncan"), then District 19 President, expressing his interest in serving as General Chairman of the district.[10]  As President, Duncan was responsible for recommending a candidate for the General Chairman position to the District 19 Executive Board.[11]  Don Hall ("Hall"), the outgoing General Chairman, recommended to Duncan that Stewart be chosen as his replacement.[12]  In September 2011, Jim Davis ("Davis"), who is Caucasian, was selected for the position on Duncan's recommendation.[13]

On October 17, 2011, Stewart wrote a letter to the IAM President complaining that Duncan's selection of Davis was the result of racial discrimination.[14]  An investigation into the complaint found no evidence that Duncan's recommendation was racially motivated.[15]  Stewart was advised of the results of this

---

[9]     See id.

[10]    See id. p. 3.

[11]    See id.; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 3.

[12]    See Doc. 51, Pl.'s Am. Compl. p. 3

[13]    See id. p. 4.

[14]    See id.

[15]    See id.; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 3.

investigation in early December 2011.[16]  On December 29, 2011, Stewart filed a charge of race discrimination against District 19 with the Equal Employment Opportunity Commission ("EEOC").[17]

In November 2011, Duncan announced that he had received complaints against Stewart and called for an investigation into the allegations.[18]  At the conclusion of an initial investigation, two IAM officials found in Stewart's favor.[19]  In February 2012, Duncan assigned another IAM official, Jeff Doerr ("Doerr"), to investigate the complaints further.[20]  Doerr concluded that Stewart had maintained a patronage scheme in contravention of IAM's constitution.[21]  On April 4, 2012, internal union charges were filed against Stewart.[22]  On the basis of these charges, Duncan removed Stewart from his position as Local Chairman.[23]

The IAM appointed a Trial Committee, which, after conducting a preliminary hearing in July 2012, determined that sufficient

---

[16]     See Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 3.

[17]     See Doc. 51, Pl.'s Am. Compl. p. 7; Doc. 59-1, Ex. A to Defs.' Mot. to Dismiss, EEOC Charge.

[18]     See Doc. 51, Pl.'s Am. Compl. p. 4.

[19]     See id.

[20]     See id. p. 5.

[21]     See id.; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 4.

[22]     See Doc. 51, Pl.'s Am. Compl. p. 5; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 5.

[23]     See Doc. 51, Pl.'s Am. Compl. p. 5.

evidence existed to warrant a formal trial.[24]  The IAM issued a decision on September 23, 2013, finding Stewart guilty of seven charges of misconduct and disqualifying him from office for five years.[25]

While Stewart's EEOC charge was pending, he informed the EEOC about IAM's charges against him, as he believed they were retaliatory.[26]  Later, on August 12, 2013, Stewart filed an amendment to his EEOC charge, alleging that Duncan had initiated the investigation against him in retaliation for complaining about Duncan's alleged racial motivations behind recommending Davis for the General Chairman position and that the subsequent trial was conducted unfairly.[27]

**B.  Procedural Background**

Stewart filed this lawsuit on May 13, 2013.[28]  On August 13, 2013, the Union filed a counterclaim, alleging violations of Section 501 of the Labor-Management and Reporting Disclosure Act of 1959 ("LMRDA" or "Act"), 29 U.S.C. § 501 ("Section 501"), which establishes fiduciary duties owed by a labor organization's

---

[24]   See id. pp. 5-6; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 5.

[25]   See Doc. 51, Pl.'s Am. Compl. p. 6; Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss p. 5.

[26]   See Doc. 51, Pl.'s Am. Compl. p. 6.

[27]   See id.; Doc. 59-4, Ex. D to Defs.' Mot. to Dismiss, EEOC Charge Amendment

[28]   See Doc. 1, Pl.'s Original Compl.

officers to the organization and its members, and civil conspiracy against Stewart and Hall, as well as state-law claims of breach of fiduciary duty, unjust enrichment, money had and received, tortious interference with the performance of an existing contractual relationship, and fraud against Stewart.[29]

On September 3, 2013, Stewart filed a motion to dismiss the Union's counterclaims.[30]  The Union responded on September 24, 2013, and Stewart filed a reply on October 15, 2013.[31]  On October 14, 2013, Hall filed a motion to dismiss the Union's counterclaims against him, to which the Union responded on November 4, 2013.[32] On December 20, 2013, the Union filed a motion to dismiss Stewart's retaliation claim under Title VII, to which Stewart responded on January 9, 2014.[33]  The Union filed a reply on January 31, 2014, and Stewart filed a surreply on February 3, 2014.[34]

## II.   Stewart and Hall's Motions to Dismiss

Stewart and Hall both move to dismiss the Union's claim under 29 U.S.C. § 501 ("Section 501") for lack of subject matter

---

[29]   See Doc. 16, Defs.' Ans. & Countercl.

[30]   Doc. 18, Pl.'s Mot. to Dismiss.

[31]   Doc. 22, Defs.' Resp. to Pl.'s Mot. to Dismiss; Doc. 25, Pl.'s Reply in Support of Mot. to Dismiss.

[32]   Doc. 24, Hall's Mot. to Dismiss; Doc. 35, Defs.' Resp. to Hall's Mot. to Dismiss.

[33]   Doc. 59, Defs.' Mot. to Dismiss; Doc. 67, Pl.'s Resp. to Defs.' Mot. to Dismiss.

[34]   Doc. 72, Defs.' Reply in Support of Mot. to Dismiss; Doc. 73, Pl.'s Surreply in Opp'n to Defs.' Mot. to Dismiss.

jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the basis that unions do not have standing to sue under the statute.  Standing is a threshold consideration which defines the limits of a federal court's power to hear and adjudicate cases. See Warth v. Seldin, 422 U.S. 490, 498 (1975); McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir. 2003).  The doctrine has two components, one involving constitutional limitations on federal court jurisdiction and the other involving prudential limitations on its exercise.  McClure, 335 F.3d at 408 (citing Raines v. Byrd, 521 U.S. 811, 820 (1997)); see also Warth, 422 U.S. at 517-18.

In order to have constitutional standing to bring suit, the plaintiff must have sustained an injury in fact "fairly traceable to the defendant's actions" and "likely to be redressed by a favorable decision" in court.  Ensley v. Cody Res., Inc., 171 F.3d 315, 319 (5th Cir. 1999); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The prudential limitations include the general requirement that a plaintiff seek relief based on his own legal rights and interests and not those of third parties. Warth, 422 U.S. at 499; Ensley, 171 F.3d at 319.  This component requires that the court review the law on which a claim is based to determine whether it grants parties such as the plaintiff a right to relief.  Warth, 422 U.S. at 500.

The Fifth Circuit has instructed that while a dismissal for lack of constitutional standing should be granted under Rule

12(b)(1), dismissal for lack of prudential standing is properly granted under Rule 12(b)(6), which provides for dismissal for failure to state a claim upon which relief can be granted.  See Blanchard 1986, Ltd. v. Park Plantation, LLC, 553 F.3d 405, 409 (5th Cir. 2008); Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011).  Because Stewart and Hall dispute the Union's right to relief under Section 501, their motions to dismiss on this basis are properly brought under Rule 12(b)(6), not Rule 12(b)(1), and the court considers them as such.

Stewart and Hall also argue that these claims must be dismissed because they fall outside the scope of Section 501.  Hall additionally moves to dismiss the Union's claims against him under Section 501 and for civil conspiracy on the basis that the Union has failed to allege sufficient facts concerning Hall's alleged actions sufficient to state the claims.  Finally, Stewart moves to dismiss the remainder of the Union's claims against him for failure to state a claim, contending that the Union's breach of fiduciary duty claim under state law is barred by the statute of limitations and that the Union's other claims must be dismissed pursuant to the anti-fracturing doctrine.

## A.   Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the pleading, on its face, fails to state a claim upon which relief can be granted.  When considering a motion

to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc., 634 F.3d at 803 n.44.

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqubal, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

**B.   Analysis**

**1.   Whether the Union is a Proper Plaintiff under Section 501**

Section 501(a) imposes fiduciary duties on a union's "officers, agents, shop stewards, and other representatives."  29 U.S.C. § 501(a).  Specifically, the Act provides that those individuals "occupy positions of trust in relation to such organization and its members as a group" and requires that they

hold and manage the union's money and property for the sole benefit of the organization, refrain from self-dealing, and remain loyal to the organization.  Id.

Subsection (b) creates a federal cause of action for individual union members to sue and "recover damages . . . for the benefit of the labor organization" when a union officer is alleged to have breached his duties "and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization."  29 U.S.C. § 501(b).  As the Supreme Court has noted, this language "certainly contemplates that a union may bring suit against its officers in some forum, but it does not expressly provide an independent basis for federal jurisdiction." Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365, 374 n.16 (1990).  Courts are divided as to whether Section 501 creates an implied cause of action for unions.  See id. (acknowledging division but declining to resolve the issue).

Federal causes of action may be created either expressly or by implication.  See Transamerica Mortg. Advisors Inc. (TAMA) v. Lewis, 444 U.S. 11, 15 (1979).  In determining whether a cause of action is implied, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  Banks

10

v. Dallas Hous. Auth., 271 F.3d 605, 611 (5th Cir. 2001) (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)).  "Statutory intent on this latter point is determinative." Alexander, 532 U.S. at 286.

Two of the three circuit courts which have addressed the issue have found that unions have an implied cause of action to allege a violation of Section 501.  See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward, 563 F.3d 276, 289 (7th Cir. 2009) (union has a cause of action); Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Statham, 97 F.3d 1416, 1421 (11th Cir. 1996) (same); Bldg. Material & Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 506-507 (9th Cir. 1989) (no cause of action).

In Traweek, the Ninth Circuit declined to recognize such a cause of action, emphasizing the "federal policy of noninteference in the internal affairs of unions and labor matters" and the "general principle . . . that the scope of federal jurisdictional statutes should be construed narrowly." Traweek, 867 F.2d at 506-07.  The court focused on the plain language of subsection (b), stating that "[t]he clear language of the statute does not contemplate a suit brought by a union, but only addresses the availability of a suit when the union refuses to sue." Id.

The Eleventh Circuit interpreted the statute differently. In Statham, the court reasoned that subsection (b), by permitting a union member to sue only after the union has refused to take

11

action, "shows Congress preferred that the union, rather than individual members, sue on its own behalf." Statham, 97 F.3d at 1419.  The court noted that "[o]ne of the early cases on this issue reasoned that if Congress assumed unions could sue, and even preferred direct action by the union to a derivative-type suit by individuals, Congress must have intended that the unions have access to federal courts." Id. (citing BRAC v. Orr, 95 L.R.R.M. 2701, 2702 (E.D. Tenn. 1977)).

The court addressed the argument that "Congress could conceivably have intended to relegate the unions to state law remedies," deciding that it is "far more in keeping with the statute as a whole to conclude that, having given the unions certain rights, Congress thought it implicit that the unions could enforce those rights in court.  Allowing the individuals to assert the unions' claims was more extraordinary and therefore had to be spelled out." Id. at 1420-21.  Thus, the court concluded "that section 501(a) was intended to create a federal cause of action that can be asserted by the union on its own behalf." Id. at 1421.

In Ward, the Seventh Circuit adopted this reasoning and expanded on how the derivative-type action created in subsection (b) reinforces the implication that subsection (a) contains an implied right of action for unions themselves.  As the Fifth Circuit has explained, by providing that a suit by a union member under subsection (b) is "for the benefit of the labor

organization," the statute creates a derivative system similar to shareholder derivative actions.  Hoffman v. Kramer, 362 F.3d 308, 317 n.4 (5th Cir. 2004) (citing 29 U.S.C. § 501).  Given this similarity, the court in Hoffman found "aspects and principles of the law regarding shareholder derivative lawsuits to be instructive" in interpreting Section 501.  Id.

A derivative shareholder action allows shareholders to "enforce a corporate cause of action against officers, directors, and third parties" where the suit is a "valid claim on which the corporation could have sued" and "the corporation itself ha[s] refused to proceed after suitable demand."  Ross v. Bernhard, 396 U.S. 531, 534 (1970).  The Ward court concluded that, given the similarities between derivative suits and the remedial structure of Section 501, "[i]t would be anomalous . . . to read this statutory scheme as remitting the union's own suit . . . to state court."  Ward, 563 F.3d at 289.

The court finds the reasoning of the Seventh and Eleventh Circuits to be persuasive and concludes that unions have an implied federal cause of action under Section 501(a) to sue for violations of the fiduciary duties imposed by the statute.  Accordingly, Stewart and Hall's motions to dismiss on the ground that the Union is not a proper plaintiff under the statue must be denied.

Stewart and Hall also contend that, even if the Union is a proper plaintiff under the statute, its claims must nonetheless be

dismissed for failure to comply with the prerequisites to suit set forth in subsection (b).  The Union's claims, however, arise under Section 501(a); the requirements of subsection (b) apply only to actions brought by union members.  "Indeed it would be absurd . . . to require the union to make a demand upon itself to sue, and to refuse that demand, before properly invoking the court's jurisdiction." Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Va. Int'l Terminals Inc., 914 F.Supp. 1335, 1340 (E.D. Va. 1996).

### 2.   Whether the Union's Allegations Fall Within the Scope of Section 501

Stewart and Hall contend that the Union failed to allege sufficient facts to indicate the plausibility of their claims against them for breach of fiduciary duty under Section 501. Section 501(a) imposes three fiduciary duties on union officials:

> (1) to hold the union's money and property solely for the benefit of the union and its members and to manage, invest, and expend the same in accordance with the union constitution and bylaws; (2) to refrain from dealing with the union as an adverse party and from holding or acquiring any pecuniary or personal interests which conflict with the interests of the union; and (3) to account to the union for any profit received by the official in connection with transactions conducted by him on behalf of the union.

Hoffman, 362 F.3d at 316 (citing 29 U.S.C. § 501(a)).

The Fifth Circuit has noted that "the fiduciary obligations imposed are primarily pecuniary in nature-that is, having to do with the custody, control, and use of a union's money and its

financial interests or property and the conduct of union officials in relation thereto." Id. Accordingly, "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA." Id. at 322. Rather, "most of these matters are the sort of 'internal union grievances' properly left to be worked out via union democratic processes . . . and not by a federal court sitting as a sort of 'super-review board.'" Id. (citing United Food & Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l Union, 301 F.3d 468, 475 (6th Cir. 2002).

Hoffman involved allegations that union officers were "derelict in the performance of their employment obligations" and that, by "accepting their salaries while not working full workweeks, they breached § 501(a) duties by misusing union funds for their personal benefit." Id. The court concluded that "the statute cannot plausibly read to give rise to a cause of action against a union officer whenever there is a disagreement concerning his work schedule or work ethic." Id.

Here, the Union's allegations against Stewart include claims that he misappropriated vending machine profits that were owed to union members; maintained a patronage system through which he appointed supporters to positions of his own creation and manipulated the distribution of overtime claims and resolution of union member claims against Union Pacific; and abused his union

15

position to improperly hold a higher paying job that should have been held by a more senior employee.[35]

The Union alleged that Hall, while serving as General Chairman, assisted Stewart in maintaining the patronage system by issuing false reports regarding Stewart's wrongdoing and traveling to Houston at union expense to suppress complaints about Stewart's misconduct.[36]

Stewart and Hall contend that these allegations do not fall within the scope of Section 501 as set forth in Hoffman.  Stewart and Hall cite only to Hoffman and two Second Circuit opinions cited by that court.  See Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC, 149 F.3d 85, 93 (2nd Cir. 1998); Guzman v. Bevona, 90 F.3d 641, 646 (2nd Cir. 1996).

The Union's allegations here are certainly more pecuniary in nature than the mere alleged "dereliction of employment duties" found insufficient in Hoffman.  Unlike the plaintiff in Hoffman, the Union has alleged that Stewart converted money that was owed to union members.  Furthermore, in Guzman, the Second Circuit affirmed the liability of union officers under Section 501 for "misus[ing] . . . money to order surveillance of a loyal but outspoken union member."  Guzman, 90 F.3d at 646.  As the Union argues, this unlawful activity is comparable to Hall's alleged traveling to

---

[35]    See Doc. 16, Defs.' Ans. & Countercl. pp. 7, 9, 10, 12-13.

[36]    See id. pp. 9-12.

Houston at union expense to assist Stewart in suppressing complaints.[37]  Therefore, the court finds that the Union has alleged a "right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

Hall further complains that, as to the Section 501 claim against him, the Union did not "plead facts, names, places, or dates as required."[38]  However, the Union need not have plead the sort of "detailed factual allegations" alluded to by Hall.  <u>Id.</u> Here, the Union has provided significantly "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Id.</u>  As stated above, the Union alleged specifics regarding Hall's activities.   The court finds that these allegations allow for an inference of "more than a sheer possibility" that Hall has acted unlawfully.  <u>Iqbal</u>, 556 U.S. at 678.  Accordingly, Stewart's motions to dismiss the Union's claims under Section 501 for failure to state a claim must be denied.

**3.   <u>Whether the Union's State-Law Claim for Breach of Fiduciary Duty is Barred by the Statute of Limitations</u>**

Stewart contends that the Union's state-law claim of breach of fiduciary duty is barred by the statute of limitations.  Under federal law, which governs the pleading requirements of a case in federal court, the statute of limitations is an affirmative

---

[37]   <u>See</u> Doc. 16, Defs.' Ans. & Countercl. p. 7.

[38]   <u>See</u> Doc. 24, Hall's Mot. to Dismiss p. 4.

defense, and the burden of proof is on the party pleading it.  See
TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008);
F.T.C. v. Nat'l Bus. Consultants, Inc., 376 F.3d 317, 322 (5th Cir.
2004).  Therefore, a plaintiff is not "required to allege that his
claims were within the applicable statute of limitations."  Frame
v. City of Arlington, 657 F.3d 215, 239-40 (5th Cir. 2011).  At the
motion to dismiss phase, a complaint should not be dismissed on the
basis of the statute of limitations unless its allegations
affirmatively demonstrate that the plaintiff's claims are time-
barred and fail to raise some basis for tolling.  Id. at 240.

In Texas, the statute of limitations for a claim of breach of
fiduciary duty is four years.  Tex. Civ. Prac. & Rem. Code §
16.004.  At this stage, the court cannot determine that the Union's
allegations concern events that occurred more than four years
before it filed its counterclaim.  The Union refered to actions
that Stewart allegedly took "as Local Chairman," a position he held
until April 2012.[39]  The court, therefore, concludes that Stewart
and Hall cannot prevail in their motions to dismiss on the basis
that the Union's claims are time-barred.

**4.   Whether the Union's Additional State-Law Claims Against
Stewart Must Be Dismissed Pursuant to the Anti-Fracturing Doctrine**

Stewart contends that the "essence" of the Union's claims

---

[39]   See Doc. 51, Pl.'s Am. Compl. pp. 5, 11 ("Stewart used his position
as Local Chairman to file and settle time claims without regard to whether or not
a particular member was affected by the violation.")

18

against him is for breach of fiduciary duty and that the Union has improperly attempted to "turn one cause of action into numerous independent claims."[40]  Stewart relies on <u>Tacon Mech. Contractors, Inc. v. Aetna Cas. and Sur. Co.</u>, 65 F.3d 486 (5th Cir. 1995)**,** where the court stated that, "[u]nder Texas law, an attempt . . . to fracture one cause of action into three or four by massaging the labels and language is impermissible." <u>Tacon</u>, 65 F.3d at 488.  The court noted that, "[l]ikewise, our own federal summary judgment procedure requires us to pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim."  The court concluded that "Tacon's tortious interference claim, at its core, merely reiterate[d] [a] bad faith claim."  <u>Id.</u>

Here, the Union does not present a detailed argument supporting its claim that the Union's additional state-law claims are mere "attempts to dress the claim up as something else."[41]  Moreover, the Union offers no legal authority for applying the anti-fracturing doctrine in the context of a breach of fiduciary claim or in ruling on a motion to dismiss for failure to state a claim.  See <u>Mia Reed & Co., Ltd. v. United Fire & Cas. Co.</u>, No. H-10-4440, 2012 WL 2499932, at *7 (S.D. Tex. June 27, 2012) (finding the application of the anti-fracturing doctrine inapplicable to a determination on a Rule 12(b)(6) question in a claim against an

---

[40]   <u>See</u> Doc. 18, Pl.'s Mot. to Dismiss p. 11.

[41]   <u>Id.</u> p. 13.

19

insurance agent and agency).   Therefore, the court finds that
Stewart cannot prevail in his motion to dismiss on this basis.

### 5.   Whether the Union stated a claim for civil conspiracy against Hall

Hall contends that the Union has not pled sufficiently
specific facts to support a claim against him for civil conspiracy.
Under Texas law, a civil conspiracy "is a combination by two or
more persons to accomplish an unlawful purpose or to accomplish a
lawful purpose by unlawful means." Cotten v. Weatherford
Bancshares, Inc., 187 S.W.3d 687, 701 (Tex. App.-Fort Worth 2006,
pet. denied). The essential elements are: "(1) two or more
persons; (2) an object to be accomplished; (3) a meeting of the
minds on the object or course of action; (4) one or more unlawful,
overt acts; and (5) damages as the proximate result." Id.

Citing no legal authority, Hall protests that the "times and
places the alleged conspiracy formed are missing" and the "actual
terms of the conspiracy are not set forth."[42] Under the Twombly
pleading standard, a complaint need not contain "detailed factual
allegations." Twombly, 550 U.S. at 555. Rather, it must include
sufficient facts to indicate the plausibility of the claims
asserted, raising the "right to relief above the speculative
level." Id. "Asking for plausible grounds to infer an agreement
does not impose a probability requirement at the pleadings stage;

---

[42]    Doc. 24, Hall's Mot. to Dismiss p. 5.

it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Id.</u> at 556.

Here, the Union has provided such "plausible grounds to infer an agreement." <u>Id.</u> The Union alleges that Hall and Stewart agreed to undertake an unlawful course of conduct whereby Stewart committed tortious acts in violation of state law and Hall suppressed complaints and filed false reports so as to prevent Stewart's actions from being exposed. The counterclaim includes specific examples of unlawful acts allegedly taken by Stewart, such as abusing his position as Local Chairman by creating positions to which he appointed supporters and manipulating the distribution of overtime claims and resolution of union member claims against Union Pacific.[43]  The Union alleges that, "as part of their mutual agreement, Hall repeatedly deflected criticism of Stewart's performance and reported to the District Lodge that all complaints about Stewart were unfounded, thus preventing corrective action from being taken."[44]

"[A] naked assertion of conspiracy . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." <u>Twombly</u>, 550 U.S. at 557.

---

[43]    Doc. 16, Defs.' Ans. & Countercl. pp. 9-10.

[44]    <u>Id.</u> p. 13.

21

The court finds that the Union's allegations regarding Stewart and Hall's coordinated unlawful actions provide the requisite "factual enhancement."  Accordingly, Hall's motion to dismiss the Union's civil conspiracy claim must be denied.

### III.  The Union's Motion to Dismiss

The Union moves to dismiss Stewart's Title VII retaliation claim on the basis that he failed to exhaust his administrative remedies.  "It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir. 1994).  The Fifth Circuit has "held that 'a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" Id. (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).

In Texas, a state that has an agency with authority similar to that of the EEOC, a complainant must file a charge of discrimination within 300 days of learning of the alleged discriminatory practice. Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998); see also 42 U.S.C. § 2000e-5(e)(1).  Exhaustion "serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving

the employer some warning as to the conduct about which the employee is aggrieved." Hayes v. MBNA Tech., Inc., 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (citing Sanchez, 431 F.2d at 466).

Here, Stewart filed charge a of discrimination with the EEOC on January 5, 2012, alleging that District 19 denied him the position of General Chairman on the basis of race.[45]   In his judicial complaint, Stewart alleged that he subsequently updated the EEOC regarding the alleged retaliation that followed.[46]   In his response to the Union's motion to dismiss, Stewart claims that he provided updates regarding retaliation in January and April 2012 and that the EEOC informed the Union that the investigation would cover possible retaliatory activity.[47]   However, an amended charge of discrimination alleging retaliation was not filed until August 12, 2013.[48]

The Union argues that, because a charge of discrimination alleging retaliation was not filed until more than 300 days after any alleged acts of retaliation, Stewart failed to exhaust his Title VII retaliation claim.   The Union does not address Stewart's

---

[45]    See Doc. 59-1, Ex. A to Defs.' Mot. to Dismiss, EEOC Charge.  "Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion." King v. Life Sch., 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

[46]    See Doc. 51, Pl.'s Am. Compl. p. 7.

[47]    See Doc. 67, Pl.'s Resp. to Defs.' Mot. to Dismiss p. 1.

[48]    See Doc. 59-4, Ex. D to Defs.' Mot. to Dismiss, EEOC Charge Amendment.

23

claim that, after filing his original charge, he informed the EEOC of the retaliatory events as they were occurring. Accepting as true Stewart's claim that he reported this retaliation to the EEOC, as it must, the court finds that Stewart has alleged a plausible claim of retaliation and that the question of exhaustion would be best resolved through discovery and summary judgment or trial. Accordingly, the Union's motion to dismiss must be dismissed.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Stewart's Motion to Dismiss Counterclaims (Doc. 18), Hall's Motion to Dismiss (Doc. 24), and the Union's Motion to Dismiss Title VII Retaliation Claim (Doc. 59) be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>10th</u> day of April, 2014.

Nancy K. Johnson
United States Magistrate Judge