IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY STEWART, | § | |
| | § | |
| Plaintiff and | § | |
| Counter-Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| INTERNATIONAL ASSOCIATION OF | § | |
| MACHINISTS AND AEROSPACE | § | |
| WORKERS AND INTERNATIONAL | § | |
| ASSOCIATION OF MACHINISTS AND | § | CIVIL ACTION NO. H-13-1391 |
| AEROSPACE WORKERS, DISTRICT 19 | § | |
| | § | |
| Defendants and | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| DON E. HALL | § | |
| | § | |
| Counter-Defendant. | § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] are Defendant International Association of Machinists and Aerospace Workers' ("IAM") Motion for Summary Judgment (Doc. 101), Defendant IAM District 19's ("District 19") Motion for Summary Judgment (Doc. 100), Plaintiff Terry Stewart's ("Stewart") Amended Motion for Summary Judgment (Doc. 114), and Stewart's Motion to Strike Defendants' Declaration from an Undisclosed Witness (Doc. 121).  The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court

---

[1]  This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 27.

**RECOMMENDS** that IAM's motion be **GRANTED**, District 19's motion be **GRANTED**, and Stewart's motion for summary judgment be **GRANTED IN PART, DENIED IN PART**.  The court further **DENIES** Stewart's motion to strike.

## I.  Case Background

Stewart filed this employment action against his union, the IAM, and District Lodge 19 of the IAM, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964[2] ("Title VII") and 42 U.S.C. § 1981[3].  The IAM and District 19 have filed counterclaims for breach of fiduciary duty under federal and state law, as well as state law claims of unjust enrichment, money had and received, tortious interference with the performance of an existing contractual relationship, civil conspiracy, and fraud.

### A.  Factual Background

Stewart, who is African-American, works as a machinist for the Union Pacific Railroad ("Union Pacific") in Houston, Texas, and is represented for collective bargaining purposes by the IAM.[4]  The IAM is comprised of over one thousand local lodges, which are each

---

[2]    42 U.S.C. §§ 2000e-2000e-17.

[3]    Because these statutory bases are functionally identical for the purposes of Stewart's claims, the court shall hereinafter refer only to Title VII.  See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 402 n.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.").

[4]    See Doc. 51, Pl.'s Am. Compl. ¶ 6.

affiliated with one of over fifty district lodges.[5]

District 19 is not a district in a geographical sense; rather, its membership is comprised of IAM members employed in the rail industry.[6]   The elected chief officer of District 19 is the President-Directing General Chairman.[7]   The District's leadership also includes twelve General Chairmen, who are elected every four years, and an elected Executive Board.[8] District 19 General Chairmen oversee the representation provided by Local Chairmen within their jurisdiction and ensure compliance with collective bargaining agreements.[9]

Stewart was hired by Union Pacific in 1998 and is a member of Local Lodge 2198 ("Local 2198").[10]   In December 2006, Stewart was elected to the position of Lodge 2198 Local Chairman, to which he was reelected in December 2009.[11]   As Local Chairman, Stewart's responsibilities included working with the District 19 General Chairmen to enforce the collective bargaining agreement with Union Pacific by filing claims and grievances, distributing overtime, and

---

[5]   See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Mark Schneider's Decl. ¶ 5.

[6]   See Doc. 51, Pl.'s Am. Compl. ¶ 6.

[7]   See Doc. 103-2, Ex. 19 to Defs.' Mots. for Summ. J., Dist. 19 Bylaws p. 7.

[8]   See id. pp. 7, 14.

[9]   See id. pp. 11-12; Doc. 100, Dist. 19's Mot. for Summ. J. p. 3.

[10]   See Doc. 107-13, Ex. 83 to Defs.' Mots. for Summ. J., Pl.'s Resume.

[11]   See id.; Doc. 51, Pl.'s Am. Compl. ¶ 6.

settling disputes.[12]  In January 2008, Stewart was appointed to the District 19 Executive Board.[13]

### 1.  Stewart's Complaint of Discrimination

In 2011, Counter-Defendant Don Hall ("Hall") announced his intention to retire from his position as a General Chairman of District 19.[14]  Pursuant to the District 19 bylaws, when a General Chairman retires mid-term, the vacancy is filled by appointment by the President-Directing General Chairman with the approval of the Executive Board.[15]  Hall recommended to Joe Duncan ("Duncan"), then the District 19 President-Directing General Chairman, that Stewart be chosen as his replacement.  Duncan interviewed Stewart, Jim Davis ("Davis"), and one other candidate for the position.  On September 1, 2011, Duncan recommended that Davis, who is Caucasian, be appointed to the position.[16]  The Executive Board subsequently approved Davis for the position.[17]

On October 17, 2011, Stewart wrote a letter to the IAM President Thomas Buffenbarger ("Buffenbarger") complaining about

---

[12]  See Doc. 51, Pl.'s Am. Compl. ¶ 6.

[13]  See Doc. 107-13, Ex. 83 to Defs.' Mots. for Summ. J., Pl.'s Resume.

[14]  See Doc. 102-4, Ex. 4 to Defs.' Mots. for Summ. J., Hall's Dep. p. 6.

[15]  See Doc. 103-2, Ex. 19 to Defs.' Mots. for Summ. J., Dist. 19 Bylaws p. 11.

[16]  See Letter from Duncan to Exec. Bd. Dated Sept. 1, 2001; Doc. 51, Pl.'s Am. Compl. ¶ 10.

[17]  See Doc. 102-3, Ex. 3 to Defs.' Mots. for Summ. J., Pl.'s Dep. p. 143.

"the selection process[,] or lack of[,] for General Chairmen and Executive Board Members for District 19."[18]   Stewart wrote that, although several African-Americans had applied to be General Chairmen in District 19, none had ever been selected.[19]   He also noted that, at that time, he was the only African-American on the thirty-member Executive Board.[20]   Buffenbarger referred the matter to Robert Roach ("Roach"), then the IAM General Vice President of Transportation, who directed IAM Deputy General Counsel Carla Siegel ("Siegel") to investigate the allegations.[21]

On December 8, 2011, Siegel sent her written report to Roach concerning her investigation into Stewart's complaint.[22]   Siegel stated that she had interviewed Stewart, Hall, and Duncan.[23]   Siegel noted that Stewart stated that he felt he had been deserving of the General Chairman position and did not understand why he had not been selected, but "did not assert that the reason for his non-selection was racially related."[24]   According to Siegel, Duncan explained that he chose Davis because Davis was the most

---

[18]   See Doc. 107-20, Ex. 90 to Defs.' Mots. for Summ. J., Letter from Pl. to Buffenbarger Dated Oct. 17, 2011.

[19]   Id.

[20]   Id.

[21]   See Doc. 107-21, Ex. 91 to Defs.' Mots. for Summ. J., Mem. from Roach to Siegel Dated Nov. 1, 2011.

[22]   See Doc. 107-22, Ex. 92 to Defs.' Mots. for Summ. J., Mem.

[23]   Id. pp. 1-3.

[24]   Id. p. 1.

experienced candidate and noted that Davis had previously been offered a General Chairman position but had not been willing to relocate at the time.[25]

On December 16, 2011, Roach advised Stewart that the IAM had investigated his complaint and found "no merit to the inference that there is a discriminatory reason behind the lack of African American General Chairmen."[26]

On December 29, 2011, Stewart filed a charge of race discrimination against District 19 with the Equal Employment Opportunity Commission ("EEOC").[27]   In the charge, Stewart alleged that District 19 had discriminated against him on the basis of race by failing to appoint him to the General Chairman position.[28]

### 2.   Complaints and Disciplinary Proceedings Against Stewart

After Stewart complained to the IAM of the selection process for District 19 General Chairmen, Roach received a letter from Derrick Battle ("Battle"), a Local 2198 Assistant Local Chairman, on November 17, 2011, asking that charges or a grievance be filed against Stewart "for conduct unbecoming of an elected officer."[29]

---

[25]    Id. p. 3.

[26]    Doc. 107-23, Ex. 93 to Defs.' Mots. for Summ. J., Letter from Roach to Pl. Dated Dec. 16, 2011.

[27]    Doc. 107-24, Ex. 94 to Defs.' Mots. for Summ. J., EEOC Charge.

[28]    Id.

[29]    Doc. 105-2, Ex. 38 to Defs.' Mots. for Summ. J., Letter from Battle to Roach Dated Nov. 17, 2011.

6

Battle wrote that Stewart was dismissive of member complaints about Stewart's unavailability, the distribution of overtime, and union member grievances against Union Pacific.[30]  Battle stated that he felt these concerns needed to be addressed, and that he "[did] not have trust in . . . Stewart."[31]  On December 5, 2011, IAM General Vice President Sito Pantoja ("Pantoja") requested that Duncan assign a General Chairman to investigate Battle's complaints.[32]

In a letter dated November 21, 2011, Duncan informed Buffenbarger that Local 2198 member Thomas Woods ("Woods") had requested that charges be brought against Stewart pursuant to Article L of the IAM constitution.[33]  Article L provides that any union member may bring charges against any union representative for "[i]ncompetence; negligence or insubordination in the performance of official duties; or failure or refusal to perform duties validly assigned."[34]  In an undated letter addressed to Duncan, Woods alleged that Stewart had "failed to represent [him] on several occasions."[35]  Woods claimed that Stewart had played a role in

---

[30]    See id.

[31]    Id. p. 3.

[32]    See Doc. 107-2, Ex. 72 to Defs.' Mots. for Summ. J., Letter from Pantoja to Duncan Dated Dec. 5, 2011.

[33]    See Doc. 107-1, Ex. 71 to Defs.' Mots. for Summ. J., Letter from Duncan to Buffenbarger Dated Nov. 21, 2011.

[34]    Doc. 103-1, Ex. 18 to Defs.' Mots. for Summ. J., IAM Constitution pp. 163, 165.

[35]    See Doc. 107-1, Ex. 71 to Defs.' Mots. for Summ. J., Undated Letter from Woods to Duncan Dated Nov. 21, 2011.

7

Woods's having been disciplined on the basis of unproven allegations and had failed to inform Woods of certain health benefits that Woods consequently did not receive.[36]  In his letter to Buffenbarger, Duncan stated that he had directed Hall and Davis to meet with Woods and Stewart "in an effort to reach an informal resolution to the issues."[37]

Davis reported back to Duncan on December 16, 2012, stating that he and Hall had spoken to Woods and Stewart about Woods's allegations.[38]  Davis wrote that he had concluded that charges against Stewart were not warranted.[39]

On January 5, 2012, a petition signed by twenty-three members of Local 2198 was sent to Duncan and Buffenbarger stating that they intended to file Article L charges against Stewart.[40]  The petition complained that Stewart had improperly arranged for "rest days" with Union Pacific and that Stewart continued to receive a salary from Union Pacific despite not performing any machinist work.[41]  Battle stated in his deposition that he had circulated the

---

[36]     See id.

[37]     Doc. 107-1, Ex. 71 to Defs.' Mots. for Summ. J., Letter from Duncan to Buffenbarger Dated Nov. 21, 2011.

[38]     See Doc. 124-3, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Davis to Duncan Dated Dec. 16, 2012 pp. IAM 722-24.

[39]     Id.

[40]     Doc. 105-6, Ex. 42 to Defs.' Mots. for Summ. J., Pet. Dated Jan. 5, 2012.

[41]     See id.

petition, which had been drafted by another member of Local 2198, Cedric Emanuel ("Emanuel").   Several union members who signed the petition later submitted declarations in which they stated that Battle had misled them about its contents or pressured them to sign it.[42]

On January 17, 2012, Duncan wrote Jeff Doerr ("Doerr"), another District 19 General Chairman, requesting and he and Davis investigate the complaints made regarding Stewart by Woods, Emanuel, and Battle.[43]   Doerr traveled to Houston in February 2012, where he interviewed Stewart, the Local 2198 President, and other members of Local 2198.[44]   Shortly after Doerr visited Houston, Duncan received several copies of a letter, each containing the signature of a Local 2198 member, complaining that disciplinary action had not been taken against Stewart and asking that Stewart be removed as Local Chairman.[45]   Two of the purported signatories later submitted declarations in which they stated that they did not

---

[42]    See Doc. 122-13, Ex. F to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of J. Garza; Doc. 122-14, Ex. G to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of S. Foster; Doc. 122-15, Ex. H to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of R. McKinney; Doc. 122-16, Ex. I to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of P. Raspberry; Doc. 122-17, Ex. J to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of G. Donald; Doc. 122-18, Ex. K to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of I. Ponce.

[43]    See Doc. 124-2, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Duncan to Doerr Dated Jan. 17, 2012 pp. IAM 618-19.

[44]    See Doc. 105-1, Ex. 37 to Defs.' Mots. for Summ. J., Doerr's Decl. ¶ 3.

[45]    See Doc. 124-9, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letters to Duncan Dated February 13, 2012 pp. IAM 3918-43.

sign the letter.[46]

Doerr prepared a report detailing his investigations into Battle, Woods, and Emanuel's complaints.[47]   Doerr concluded that Stewart had failed to ensure that overtime was assigned fairly, that Union Pacific had improperly assigned Stewart to a high-paying road machinist position, that Stewart had worked with Union Pacific to improperly change his rest days, that Stewart had not been available to members, and that Stewart had improperly appointed union representatives.[48]   Doerr filed Article L charges against Stewart on April 4, 2012, reiterating the findings set forth in his report.[49]   The same day, Duncan wrote to Buffenbarger, informing him of the charges and requesting that, "in fairness to the accused and in the best interests of the [IAM], the charges be referred to a special committee for investigation and trial."[50]

On April 5, 2012, Duncan wrote to Stewart, stating that Article L charges had been filed against him and that he was,

---

[46]     Doc. 122-14, Ex. G to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of S. Foster; Doc. 122-17, Ex. J to Pl.'s Resps. to Defs.' Mots. for Summ. J., Decl. of G. Donald.

[47]     See Doc. 105-11, Ex. 47 to Defs.' Mots. for Summ. J., Doerr Report Re: Battle; Doc. 105-12, Ex. 48 to Defs.' Mots. for Summ. J., Doerr Report Re: Emanuel; Doc. 105-13, Ex. 49 to Defs.' Mots. for Summ. J., Doerr Report Re: Woods.

[48]     See Doc. 105-11, Ex. 47 to Defs.' Mots. for Summ. J., Doerr Report Re: Battle pp. 1-4.

[49]     See Doc. 105-16, Ex. 52 to Defs.' Mots. for Summ. J., Article L Charges.

[50]     See Doc. 124-8, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Duncan to Buffenbarger Dated Apr. 4, 2012 p. IAM 1915.

therefore, "notifying [him] that [he] [was] suspended from the position of District Lodge 19 Executive Board Member pending investigation and resolution of the charges."[51]   That day, Duncan also wrote to the president of Local 2198, informing her that Stewart was suspended from the office of Local Chairman, to be replaced by Battle, pending the investigation and resolution of the Article L charges.[52]

On April 10, 2012, Buffenbarger informed Stewart that the Article L charges had been filed and that Buffenbarger had determined that the charges would be heard by a trial committee that would conduct a preliminary investigation to determine whether or not a formal trial was warranted.[53]   The same day, Buffenbarger notified Otha McSwain ("McSwain"), Frank Schifano, and Richard Chu that he was appointing them to the trial committee that would hear Stewart's case.[54]

The trial committee conducted a preliminary investigation on July 16 and 17, 2012.[55]   After meeting with Doerr, the trial

---

[51]   Doc. 124-8, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Duncan to Pl. Dated Apr. 5, 2012.

[52]   See Doc. 124-8, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Duncan to J. Saciri Dated Apr. 5, 2012.

[53]   See Doc. 124-8, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Buffenbarger to Pl. Dated Apr. 10, 2012.

[54]   See Doc. 107-3, Ex. 73 to Defs.' Mots. for Summ. J., Letter from Buffenbarger to McSwain, Schifano, and Chu Dated Apr. 10, 2012.

[55]   See Doc. 107-4, Ex. 74 to Defs.' Mots. for Summ. J., Report of the Trial Comm. p. 3.

committee met with Stewart and Hall, who was serving as Stewart's advocate.[56]  The trial committee denied Stewart and Hall's request to record the proceedings.[57]  According to the trial committee, Stewart and Hall then stated that they refused to participate in the preliminary investigation.[58]  Stewart denied this in his declaration, stating that the trial committee "abruptly cancelled the hearing as soon as [he] pled to the charges."[59]

On July 24, 2012, Duncan was forced to resign and was disqualified from holding any IAM office after it was determined that he had misappropriated union funds.[60]  Doerr became President-Directing General Chairman of District 19 upon Duncan's resignation.[61]

On March 22, 2013, McSwain informed Stewart that his trial would be held on May 22, 2013.[62]  The trial was later postponed until June 26, 2013.[63]  On the first day of the hearing, Doerr

---

[56]     See id.

[57]     See id.

[58]     See id.

[59]     Doc. 124-20, Ex. M to Pl.'s Resps. to Defs.' Mots. for Summ. J., Pl.'s Decl. ¶ 13.

[60]     See Doc. 107-33, Ex. 103 to Defs.' Mots. for Summ. J., Letter from Roach to W. Gregory Dated July 24, 2012.

[61]     See Doc. 100, Dist. 19's Mot. for Summ. J. p. 17.

[62]     See Doc. 104-4, Ex. 24 to Defs.' Mots. for Summ. J., Letter from McSwain to Pl. Dated Mar. 22, 2013.

[63]     See Doc. 107-4, Ex. 74 to Defs.' Mots. for Summ. J., Report of the Trial Comm. p. 4.

presented his case and Stewart, with Hall acting as his advocate, began his defense with his own testimony.[64] At the end of the day, McSwain recessed the trial, which was set to resume on July 9, 2013.[65] On July 8, 2013, Hall notified McSwain that he would be unavailable to participate in the hearing due to the death of his aunt and requested that the trial be postponed ten days.[66] McSwain denied the request, offering instead to postpone the trial until July 11, 2013, which was three days after the funeral.[67] The trial reconvened on July 9, 2013, where Stewart again asked for a ten-day postponement.[68] McSwain stated that the request was denied and that the trial would continue that day because Stewart had not agreed to reset the trial for July 11, 2013.[69] Stewart stated that he felt he was being denied representation and refused to participate in the proceedings.[70] Doerr then presented his rebuttal case, and the trial concluded.[71]

---

[64]   See id.

[65]   See id.

[66]   See id.; Doc. 104-2, Ex. 22 to Defs.' Mots. for Summ. J., Trial Tr. Part 2 p. 12.

[67]   See Doc. 104-2, Ex. 22 to Defs.' Mots. for Summ. J., Trial Tr. Part 2 p. 12-13.

[68]   See id.

[69]   See id.

[70]   See id. pp. 17-21.

[71]   See Doc. 107-4, Ex. 74 to Defs.' Mots. for Summ. J., Report of the Trial Comm. p. 5.

13

On August 12, 2013, Stewart filed an amendment to his EEOC charge, alleging that Duncan had initiated the investigation against him in retaliation for complaining about the selection process for General Chairmen and that his trial had been conducted unfairly.[72]

The trial committee issued its report on September 18, 2013. The committee found that Stewart was guilty of seven of the eight charges against him, stating that he had "held the position of Local Chairman for his own benefit and did not act for the benefit of the good and the welfare of the membership at all times."[73]   The trial committee recommended that Stewart be disqualified from holding any IAM office for five years.[74]   On September 23, 2013, Buffenbarger notified Stewart that he concurred with the trial committee's findings and affirmed the recommended punishment.[75]

### B.   Procedural Background

Stewart filed this lawsuit on May 13, 2013.[76]   On August 13, 2013, the IAM and District 19 filed counterclaims, alleging violations of Section 501 of the Labor-Management and Reporting

---

[72]   See Doc. 107-27, Ex. 97 to Defs.' Mots. for Summ. J., Amendment to EEOC Charge.

[73]   See Doc. 107-4, Ex. 74 to Defs.' Mots. for Summ. J., Report of the Trial Comm. p. 12.

[74]   Id.

[75]   See Doc. 107-5, Ex. 75 to Defs.' Mots. for Summ. J., Letter from Buffenbarger to Pl. Dated Sept. 23, 2013.

[76]   See Doc. 1, Pl.'s Original Compl.

Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 501 ("Section 501"), which establishes fiduciary duties owed by a labor organization's officers to the organization and its members, and civil conspiracy against Stewart and Hall, as well as claims of breach of fiduciary duty, unjust enrichment, money had and received, tortious interference with the performance of an existing contractual relationship, and fraud against Stewart.[77] On April 10, 2014, the court recommended that motions to dismiss filed by IAM and District 19, Stewart, and Hall be denied.[78] The recommendation was adopted on April 28, 2014.[79]

District 19, the IAM, and Stewart filed motions for summary judgment on April 18, 2014.[80] Stewart filed an amended motion for summary judgment on April 22, 2014.[81] The IAM and District 19 responded to Stewart's motion on May 9, 2014, and Stewart filed a reply on May 23, 2014.[82] Stewart filed responses to the IAM and District 19's motions on May 9, 2014, and the IAM and District 19

---

[77]   See Doc. 16, Defs.' Ans. & Countercl.

[78]   See Doc. 99, Mem. & Recommendation Dated Apr. 10, 2014.

[79]   See Doc. 117, Order Dated Apr. 28, 2014.

[80]   See Doc. 100, Dist. 19's Mot. for Summ. J.; Doc. 101, IAM's Mot. for Summ. J; Doc. 111, Pl.'s Mot. for Summ. J.

[81]   See Doc. 114, Pl.'s Am. Mot. for Summ. J.

[82]   See Doc. 119, Defs.' Resp. to Pl.'s Am. Mot. for Summ. J.; Doc. 127, Pl.'s Reply in Supp. of Mot. for Summ. J.

filed replies on May 23, 2014.[83]  Stewart filed surreplies to both motions on June 13, 2014.[84]  On May 9, 2014, Stewart filed a motion to strike a declaration relied upon by the IAM.[85]  The IAM responded on May 28, 2014, and Stewart filed a reply on June 5, 2014.[86]

## II.  Stewart's Motion to Strike

Stewart moves to strike the declaration of Mark Schneider ("Schneider"), relied upon by the IAM in its motion for summary judgment.[87]  Schneider's declaration describes the organizational structure of the IAM, the IAM constitution, and the relationship between the IAM and its subordinate bodies.[88]

The discovery deadline in this case was May 30, 2014, and the deadline for dispositive motions was April 18, 2014.[89]  Schneider's declaration was filed along with the IAM's motion for summary judgment on April 18, 2014.[90]  The IAM then included Schneider in a supplemental disclosure of individuals likely to have

---

[83]    See Doc. 122, Pl.'s Resp. to Dist. 19's Mot. for Summ. J.; Doc. 123, Pl.'s Resp. to IAM's Mot. for Summ. J.; Doc. 125, IAM's Reply in Supp. of Mot. for Summ. J.; Doc. 126, Dist. 19's Reply in Supp. of Mot. for Summ. J.

[84]    See Doc. 130, Pl.'s Surreply in Opp'n to Dist. 19's Mot. for Summ. J.; Doc. 131, Pl.'s Surreply in Opp'n to IAM's Mot. for Summ. J.

[85]    See Doc. 121, Pl.'s Mot. to Strike.

[86]    See Doc. 128, IAM's Resp. to Pl.'s Mot. to Strike; Doc. 129, Pl.'s Reply in Supp. of Mot. to Strike.

[87]    See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl.

[88]    See id.

[89]    See Doc. 21, Docket Control Order Dated Sept. 20, 2013.

[90]    See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl.

discoverable information that it may use to support its case, submitted on May 6, 2014.[91]

Pursuant to Federal Rule of Civil Procedure ("Rule") 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a) provides, in relevant part, that a party must provide to the other parties "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(I). Rule 26(e) provides that a party must supplement or correct such disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).

Stewart argues that the IAM violated either Rule 26(a) or (e) by failing to designate Schneider before filing his declaration on April 18, 2014. The IAM responds that Schneider's declaration was timely filed, and, regardless, any delay in notifying Stewart of

---

[91]   See Doc. 121-3, Ex. C to Pl.'s Mot. to Strike, IAM's Supplemental Disclosures.

its intent to rely on Schneider was harmless.  The court agrees that Stewart cannot demonstrate that it was prejudiced by the IAM's failure to disclose that it would be relying on Schneider's testimony prior to filing its motion for summary judgment.

On August 23, 2013, Stewart served the IAM with a Rule 30(b)(6) notice of deposition indicating that it sought information regarding the "organizational structure" of the IAM.[92]  The IAM designated Siegel, its Deputy General Counsel, as its representative.[93]  Siegel served as the IAM's Acting General Counsel from around the time Stewart filed its notice of deposition until October 1, 2013.[94]  At the November 20, 2013 deposition, Siegel testified about the relationship between the IAM and the district lodges.[95]  The IAM also produced organizational charts, the IAM Constitution, and the bylaws of District 19.[96]

The testimony of Schneider, who became the IAM's General Counsel on October 1, 2013, reiterates information previously disclosed to Stewart through Siegel's deposition and the produced documents.  Stewart claims prejudice because he "never had the

---

[92]     Doc. 128-1, Ex. A to IAM's Resp. to Pl.'s Mot. to Strike, Pl's Notice of Dep. pp. 1, 4.

[93]     Doc. 128, IAM's Resp. to Pl.'s Mot. to Strike, p. 2; Doc. 128-2, Ex. B to IAM's Resp. to Pl.'s Mot. to Strike, Siegel's Dep. pp. 118-19, 188-89.

[94]     Doc. 128, IAM's Resp. to Pl.'s Mot. to Strike, p. 2 n.1.

[95]     Doc. 128-2, Ex. B to IAM's Resps. to Pl.'s Mot. to Strike, Siegel's Dep. pp. 118-19, 188-89.

[96]     Doc. 128-2, Ex. B to IAM's Resp. to Pl.'s Mot. to Strike, Siegel's Dep. p. 189.

chance to depose [Schneider] and obtain testimony that directly discredits the conclusory information that the IAM is now using."[97] However, Stewart does not identify any information in Schneider's declaration that contradicts Siegel's testimony or other discovery on the topic or that is outside of the scope of Stewart's notice of deposition. Accordingly, the court **DENIES** Stewart's motion to strike.

### III. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary

---

[97]     Doc. 121, Pl.'s Mot. to Strike p. 3.

judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not

judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not

carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. City of Henderson, Tex.</u>, 286 F.3d 264, 269 (5th Cir. 2002).

In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial.  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.

"[U]nsubstantiated assertions are not competent summary judgment evidence."  <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998)(citing <u>Celotex Corp.</u>, 477 U.S. at 324).  Furthermore, it is not incumbent on the court to search the record for triable issues.  <u>Id.</u>  The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment.  <u>Id.</u>  Under the Federal Rules, the court need only consider cited materials in deciding whether a party's evidence satisfies that party's summary judgment burden.  Fed. R. Civ. Proc. 56(c)(3).

## IV.  Analysis

**A.   <u>Stewart's Discrimination Claim Against the IAM</u>**

Stewart brings a claim of discrimination against District 19

and the IAM in connection with Davis's appointment to the General Chairman position.  Asserting that District 19 was Stewart's only employer, the IAM argues that it is entitled to summary judgment because it was not Stewart's employer and, therefore, cannot be held liable for discrimination under Title VII.  Stewart responds that the IAM and District 19 represent a single employer and, alternatively, that the IAM is liable under the "sufficient connection" test of Myers v. Gilman Paper Corp., 544 F.2d 837, 850-51 (5th Cir. 1977).  The court considers both tests.

> **1.  Whether the IAM was Stewart's Employer**

As Title VII prohibits discrimination in the employment context, generally only employers may be liable under Title VII. See Turner v. Baylor Richardson Med. Center, 476 F.3d 337, 343 (5th Cir. 2007).  In Trevino v. Celanese Corp., 701 F.2d 397 (5th Cir. 1983), the Fifth Circuit adopted the rule that "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." Trevino, 476 F.3d at 404.  In Trevino, the Fifth Circuit listed several factors as relevant in determining whether distinct entities constitute an integrated enterprise: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Id. Highest importance is placed on the second factor, which the Fifth Circuit has "rephras[ed] and specif[ied] . . . so as to boil down

to an inquiry of what entity made the final decisions regarding employment matters related to the person claiming discrimination." Turner, 476 F.3d at 344 (internal quotation marks omitted) (quoting Chaiffetz v. Robertson Research Holding, Ltd., 798 F.2d 731, 735 (5th Cir. 1986)).

The Fifth Circuit has observed that "other federal courts have uniformly held that the usual relationship between an employer local union and its International Union is not sufficient in and of itself to support single entity status for purposes of Title VII." Vicks v. United Food and Commercial Workers Local 210, 103 F.3d 125, No. 96-30119, 1996 WL 731425, at *2 (5th Cir. 1996) (citing Herman v. United Bhd. of Carpenters & Joiners of Am., Local No. 971, 60 F.3d 1375, 1383-84 (9th Cir. 1995); Shepherdson v. Local Union No. 401 of Int'l Ass'n of Bridge Structural & Ornamental Ironworkers, 823 F. Supp. 1245, 1249-57 (E.D. Pa. 1993)). Specifically, in Herman, the court declined to treat a local and its international union as a single entity despite the fact that the "International charter[ed] the local unions, receive[d] dues from the locals, ha[d] the power to dissolve the locals and receive their assets, ha[d] the power to impose trusteeships over locals and control their affairs, and . . . the [International's] constitution forb[ade] locals to make rules which conflict[ed] with those of the International." Herman, 60 F.3d at 1383. The court explained that these features were "common in union constitutions

23

and [did] not sufficiently evidence the type of inter-relationship between the day-to-day operations of the International and the local union required to [treat the two as a single entity]." Id. at 1384.

An analysis of the Trevino factors in this case similarly leads to the conclusion that the IAM and District 19 do not represent a "single, integrated enterprise." Trevino, 701 F.2d at 404. Stewart has failed to show interrelation of the IAM and District 19's operations. District 19 has its own bylaws that govern its internal affairs.[98] These bylaws set forth the duties of officers and Executive Board members, as well as General Chairmen, who are primarily responsible for providing services in connection with enforcing collective bargaining agreements.[99] District 19's officers are only authorized to act on behalf of the district and may not, by virtue of their employment with the district, act in the name of the IAM.[100]

Stewart argues that interrelation between the two entities is demonstrated by Roach's testimony in his deposition that Duncan reported him when Roach was the IAM General Vice President of

---

[98]   See Doc. 103-2, Ex. 19 to Defs.' Mots. for Summ. J., Dist. 19 Bylaws.

[99]   See id. pp. 11, 14; Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl. ¶ 13.

[100]   Id. ¶ 12.

Transportation.[101]   Roach testified that he and Duncan "had a very good working relationship" and that Duncan "had to come to [him]" regarding "issues related to contract negotiations, rail negotiations . . . [and] [the] administration of local lodges."[102]

This testimony does not reflect "day-to-day control of operations," as required to demonstrate interrelated operations. Shepherdson, 823 F. Supp at 1256.   The Fifth Circuit has instructed that, in the context of parent-subsidiary relationships, "[t]he interrelation of operations element . . . ultimately focuses on whether the parent . . . excessively influenced or interfered with the business operations of its subsidiary." Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778 (5th Cir. 1997).   "Attention to detail, not general oversight, is the hallmark of interrelated operations." Id. (internal quotation marks omitted).   Stewart has provided no record evidence of such excessive influence or attention to detail on the part of the IAM.

With respect to the second factor-centralized control of labor relations-the evidence reflects that District 19 determines the number of elected positions the district will have and sets its employees' salaries, daily assignments, and working conditions.[103]

---

[101]   See Doc. 124-28, Ex. V to Pl.'s Resps. to Defs.' Mots. for Summ. J., Roach's Dep. pp. 85, 92.

[102]   Id.

[103]   See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl. ¶ 14; Doc. 103-2, Ex. 19 to Defs.' Mots. for Summ. J., Dist. 19 Bylaws pp. 7-14.

The district pays its employees' benefits and expenses and issues their W-2s.[104]   The District 19 bylaws set forth how officers and General Chairmen are to be elected or appointed in the event a position becomes vacant.[105]

The record further indicates that the procedures set forth in the District 19 bylaws were followed when Duncan appointed Davis, who was then approved by the District 19 Executive Board.[106] Stewart argues that the IAM exercised control over the selection of General Chairmen in District 19 through its provision of financial support to the district and issuance of IAM credentials.   The IAM provides financial support to each district in the amount of fifty percent of the salary of each credentialed General Chairman, up to an approved number of General Chairmen.[107]   After Davis's appointment was approved by the District 19 Executive Board, Duncan wrote to the IAM requesting that Davis receive IAM credentials, which the IAM granted.[108]

Stewart's contentions are unpersuasive.   First, the record

---

[104]   See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl. ¶ 14

[105]   See Doc. 103-2, Ex. 19 to Defs.' Mots. for Summ. J., Dist. 19 Bylaws pp. 7-14.

[106]   See id. p. 11.

[107]   See Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl. ¶ 13; Doc. 124-29, Ex. W to Pl.'s Resps. to Defs.' Mots. for Summ. J., Siegel's Dep. p. 196.

[108]   See Doc. 107-16, Ex. 86 to Defs.' Mots. for Summ. J., Letter from Duncan to Roach Dated Dec. 8, 2011; Doc. 107-18, Ex. 88 to Defs.' Mots. for Summ. J., Memo. from Roach to Buffenbarger Dated Dec. 14, 2011.

26

indicates that the IAM's decision whether to issue credentials hinged solely on its budget for supporting the districts.[109] Second, it is undisputed that districts may elect or appoint General Chairmen regardless of whether they receive IAM credentials. Siegel and Roach testified in their depositions that districts have elected or appointed general chairmen who did not receive credentials from the IAM.[110]  It is apparent, then, that District 19 made the final decision regarding the selection of its General Chairmen.

Stewart further argues that the IAM's involvement in Stewart's disciplinary proceedings reflects centralized control of labor relations.  However, the record reflects that the decision to bring Article L charges against Stewart was made by Doerr, a District 19 General Chairman, after investigating complaints brought by Local 2198 members.  Stewart attempts to impute the decision to the IAM because Doerr previewed the draft of his report with Pantoja and Siegel.[111]  Doerr, however, made no changes to his draft after this meeting.[112]  Doerr testified in his deposition that he "wanted to

---

[109]    See Doc. 124-29, Ex. W to Pl.'s Resps. to Defs.' Mots. for Summ. J., Siegel's Dep. p. 196; Doc. 124-28, Ex. V to Pl.'s Resps. to Defs.' Mots. for Summ. J., Roach's Dep. pp. 132-35.

[110]    See Doc. 124-29, Ex. W to Pl.'s Resps. to Defs.' Mots. for Summ. J., Siegel's Dep. p. 196; Doc. 124-28, Ex. V to Pl.'s Resps. to Defs.' Mots. for Summ. J., Roach's Dep. pp. 132-35.

[111]    See Doc. 124-21, Ex. O to Pl.'s Resps. to Defs.' Mots. for Summ. J., Doerr's Dep. p. 105-06.

[112]    See Doc. 125-1, Ex. A to IAM's Reply in Supp. of Mot. for Summ. J., Doerr's Dep. pp. 151-152.

show them what I found and tell them . . . [he] felt Article L charges were probably going to be the only way we could go."[113] After the meeting, Doerr decided to file the charges against Stewart.[114]   While this meeting demonstrates that Doerr sought counsel from the IAM, the final decision to file Article L charges was made by District 19's General Chairman Doerr.

Stewart also emphasizes that the trial committee members were chosen by Buffenbarger and that Buffenbarger affirmed the decision and punishment of the committee.   The record reflects that Buffenbarger decided to appoint a trial committee only after a District 19 General Chairman, Duncan, requested that, "in fairness to the accused and in the best interests of the [IAM], the charges be referred to a special committee for investigation and trial."[115] Pursuant to the IAM constitution, when such a trial committee is appointed, its decision is subject to the review of the International President.[116]

Thus, while the IAM was involved in Stewart's disciplinary proceedings, this involvement followed what the summary judgment evidence reflects to be an independent decision on the part of a

---

[113]    Id.

[114]    Id.

[115]    See Doc. 124-8, Ex. B to Pl.'s Resps. to Defs.' Mots. for Summ. J., Letter from Duncan to Buffenbarger Dated Apr. 4, 2012 p. IAM 1915.

[116]    See Doc. 103-1, Ex. 18 to Defs.' Mots. for Summ. J., IAM Constitution p. 166

District 19 General Chairman to press charges and a request for IAM involvement by the District 19 President-Directing General Chairman.  Given District 19's undisputed control over the terms and conditions of the General Chairman position, its responsibility for providing benefits and paying salaries and expenses, and its control over the election and appointment processes, the court finds that, on the whole, the second <u>Trevino</u> factor weighs against considering the IAM and District 19 to be a single, integrated enterprise.

With respect to the third factor-common management-Stewart has not alleged that any of District 19's officers are officers or employees of the IAM.  As to the fourth factor-common ownership or financial control-it is undisputed that District 19 maintains a separate treasury and bank accounts and supports itself financially primarily though collecting dues from its members.[117]  The IAM and District 19 file separate annual financial reports with the Department of Labor and are treated as separate legal entities under the LMRDA.[118]  Stewart points to the IAM's practice of auditing its districts.[119]  However, the IAM's practice of conducting audits is insufficient to demonstrate financial control.

---

[117]    <u>See</u> Doc. 102-1, Ex. 1 to Defs.' Mots. for Summ. J., Schneider's Decl. ¶¶ 11, 13.

[118]    <u>See</u> <u>id</u>. ¶¶ 8-9.

[119]    Doc. 124-28, Ex. V to Pl.'s Resps. to Defs.' Mots. for Summ. J., Roach's Dep. p. 14.

See <u>Meredith v. La. Fed. Of Teachers</u>, No CIV. A. 94-3712, 1996 WL
137632, at *6 (E.D. La.  Mar. 26, 1996).

Based on the foregoing, the court concludes that the IAM and
District 19 are not a "single employer" for purposes of Title VII.

**2.  Whether the IAM may be held liable under <u>Myers</u>'s
"sufficient connection" test**

Stewart argues that, alternatively, the IAM may be held liable
under <u>Myers</u>, where the Fifth Circuit found an international union
liable for the discriminatory effects of a collective bargaining
agreement administered by one of its locals.  <u>Myers</u>, 544 F.2d at
851.  The court concluded that a "sufficient connection" existed
between the international and the discriminatory practices by
virtue of the "close relationship" between the international and
the local, "under which the international would generally provide
advisors who would review and often comment upon the local's
bargaining position."  <u>Id.</u>  The court further noted that "[a]n
additional aspect of the relationship was the international's
requirement that locals submit contracts to it for its approval."
<u>Id.</u>

In <u>Sinyard v. Foote & Davies Division of McCall Corp.</u>, 577
F.2d 943, 947 (5th Cir. 1978), the court explained that <u>Myers</u> did
not "sanction our blanket imposition of an affirmative duty on
international unions to police their locals to insure
nondiscrimination."  <u>Sinyard</u>, 577 F.2d at 945.  Rather, an
international's liability is "based on the relationship between the

international and the local and the amount and type of involvement which the international has" with the alleged discriminatory practice. Id. There, the court found that the international could not be found liable because it "had not caused or participated in and did not approve the condition complained of." Id. at 947.

In the case at hand, the IAM had no involvement in the selection of Davis to fill Hall's position as General Chairman. There is no record evidence that the IAM had any influence over Duncan's decision to appoint Davis or the Executive Board's vote to approve the selection. Although the IAM issued IAM credentials to Davis, as discussed above, the record indicates that districts may elect or appoint General Chairmen regardless of whether they receive IAM credentials.[120]  Therefore, the court concludes that a "sufficient connection" does not exist between the IAM's actions and Davis's appointment to raise a fact issue that the IAM is liable for Stewart's non-selection to the position.  Accordingly, IAM is entitled to summary judgment on Stewart's discrimination claim.

**B.  Stewart's Retaliation Claim**

Stewart alleges that disciplinary proceedings were brought against him in retaliation for his complaining about the selection process for General Chairmen and Executive Board members in

---

[120]  See Doc. 124-29, Ex. W to Pl.'s Resps. to Defs.' Mots. for Summ. J., Siegel's Dep. p. 196; Doc. 124-28, Ex. V to Pl.'s Resps. to Defs.' Mots. for Summ. J., Roach's Dep. pp. 132-35.

District 19 and filing charges with the EEOC.  District 19 and the IAM argue that they are entitled to summary judgment because Stewart has failed to produce evidence capable of establishing a causal connection between his complaint and the disciplinary proceedings.

Title VII's anti-retaliation clause forbids an employer from acting in a way that discriminates against an employee because he has participated in a Title VII proceeding or has opposed a discriminatory practice.  42 U.S.C. § 2000e-3(a); Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271 (2009).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.  Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013). A plaintiff has engaged in a protected activity if he "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII" or "opposed any practice made an unlawful employment practice by Title VII." Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3) (internal quotation marks omitted).

If a plaintiff establishes a prima facie case, an inference of

32

retaliation is raised, and the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for its actions.  See Feist v. State of La., 730 F.3d 450, 454 (5th Cir. 2013).  If the defendant satisfies this burden, then the inference of retaliation dissolves, and the burden shifts back to the plaintiff to demonstrate that the defendant's reason is actually a pretext for retaliation.  See id.  To make this showing, the plaintiff must demonstrate that the adverse action would not have occurred "but for" the employer's retaliatory motive.  See id. (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013)).  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have not taken the action 'but for' the protected activity."  Id. (quoting Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir. 1996)).

### 1.   Stewart's Claim Against District 19

District 19 concedes that Stewart engaged in protected activity by making the October 17, 2011 complaint to Buffenbarger and filing a charge with the EEOC on December 29, 2011.  It also concedes that Stewart suffered an adverse employment action though the filing of Article L charges against him.  District 19 argues that Stewart nonetheless cannot establish a prima facie case of retaliation because the facts do not show a causal connection between his complaint or EEOC charge and the filing of Article L

33

charges.

To establish the causal link necessary to make out a prima facie case of retaliation, a plaintiff must produce evidence that "demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001).  The test at the prima facie stage is less stringent than the "but for test," but the plaintiff nonetheless "must produce *some* evidence of a causal link." Ackel v. Nat'l Comms., Inc., 339 F.3d 376, 385; Evans v. City of Houston, 246 F.3d 334, 354 (5th Cir. 2001).  A plaintiff who relies on nothing more than his subjective belief that he was the victim of retaliation cannot establish a causal connection.  Peace v. Harvey, 207 F. App'x 366, 369 (5th cir. 2006) (unpublished).

A plaintiff who has alleged retaliation may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).  However, temporal proximity can only establish causation "when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Comervell Cnty., Tex., 431 F. App'x 338, 342 (5th Cir. 2011).  "Such temporal proximity must generally be 'very close.'" Feist, 730 F.3d at 454 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).  The Fifth Circuit

has stated that "a time lapse of up to four months may be sufficiently close, while a five month lapse is not close enough without other evidence of retaliation." Feist, 730 F.3d at 454 (citations and internal quotation marks omitted). Such evidence may include "an employer's departure from typical policies and procedures," or "[d]isparate treatment of similarly situated employees." Feist, 730 F.3d at 454-55 (citing Schroeder v. Greater New Orleans Fed. Credit Union, 664 F.3d 1016, 1024 (5th Cir. 2001); Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005)).

Stewart argues that the close timing between his protected activity and the filing of Article L charges establishes the requisite causal connection. However, it is undisputed that Doerr filed the Article L charges against Stewart, and Stewart points to no evidence indicating that Doerr was aware of Stewart's protected activity. Because Stewart has failed to produce "evidence of knowledge of the protected activity on the part of the decision maker," he cannot establish a causal link through the temporal proximity of his protected activity and Doerr's actions. Ramirez v. Gonzales, 225 F. App'x 203, 210 (5th Cir. 2007) (unpublished).

Stewart argues that additional evidence of causation exists in the form of disparate treatment. To establish disparate treatment, Stewart must show that District 19 gave preferential treatment to another employee under "nearly identical" circumstances. Okoye v.

35

Univ of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir. 2001).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th cir. 2009).  "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id.

Stewart offers as comparators Hall and Local 2198 Assistant Local Chairman Joey Harris ("Harris").  Emanuel sent a letter to Duncan complaining about Hall on December 28, 2011.[121]  Emanuel alleged that Hall had failed to represent him in an arbitration proceeding and had ignored grievances related to Union Pacific improperly assigning a position to Stewart.[122]  Harris was mentioned in Battle's letter to Roach complaining about Stewart, in which Battle accused Harris of improperly distributing overtime.[123]

However, neither Hall nor Harris faced accusations similar in

---

[121]    See Doc. 124-3, Ex. B. to Pls.' Resps. to Defs.' Mots. for Summ. J., Letter from Emanuel to Duncan Dated Dec. 28, 2011.

[122]    Id.

[123]    Doc. 105-2, Ex. 38 to Defs.' Mots. for Summ J., Letter from Battle to Roach Dated Nov. 17, 2011.

magnitude to those made against Stewart.  Whereas three separate
complaints were made against Stewart, one of which was signed by
twenty-three union members, the record reflects that Hall and
Harris were only the subject of one complaint each.  Moreover, Hall
and Harris did not hold the same position as Stewart.  Hall retired
from his position as General Chairman days after Emanuel sent his
complaint to Duncan.[124]  Doerr explained in his deposition that he
"didn't feel there was a point to file a charge on . . . Hall since
he had retired already."[125]  Harris held the position of Assistant
General Chairman and, thus, had different responsibilities and did
not share the same supervisor as Stewart.  Therefore, Stewart has
failed to show that District 19 gave preferential treatment to
another employee under "nearly identical" circumstances.

Beyond temporal proximity and disparate treatment, Stewart
argues that Duncan, who was made aware of Stewart's initial
complaint through Siegel's investigation of it, showed animosity
toward Stewart due to the complaint and that he imparted that
animus to Doerr.  Where the person responsible for the adverse
employment action is not the person alleged to harbor retaliatory
animus, the plaintiff must "demonstrate that those with
discriminatory intent had influence or leverage over the official

---

[124]   See Doc. 102-4, Ex. 4 to Defs.' Mots. for Summ. J., Hall's Dep. p.
6.

[125]   Doc. 126-5, Ex. E to Dist. 19's Reply in Supp. of Mot. for Summ. J.,
Doerr's Dep. p. 237.

decisionmaker, in order to impute discriminatory attitudes to the formal decisionmaker." <u>Vicknair v. La. Dept. of Pub. Safety & Corr.</u>, 555 F. App'x 325, 334 (5th Cir. 2014) (unpublished) (alterations and internal quotation marks omitted) (quoting <u>Russell v. Univ. of Tex. of Permian Basin</u>, 234 F. App'x 195, 203 (5th Cir. 2007)).

Stewart alleges that Duncan's retaliatory animus is demonstrated by his ordering Doerr to investigate the complaints made against Stewart by Battle, Woods, and Emanuel shortly after he learned of Stewart's complaint to Buffenbarger.  The record makes clear, however, that the IAM initiated the investigation when it requested that Duncan assign a General Chairman to investigate the complaints.[126]  Moreover, Stewart has adduced no evidence suggesting that Duncan instigated the complaints made against Stewart by Battle, Woods, and Emanuel.  Evidence that Battle may have misled union members about the contents of his petition and allegations that letters sent to Duncan may have contained forged signatures does not raise a fact issue that Duncan had a retaliatory animus toward Stewart.  Stewart urges that Duncan's involvement in these complaints is demonstrated by Duncan's appointment of Battle to serve as Local 2198 Chairman after Stewart's suspension.  Such unsubstantiated speculation is insufficient to demonstrate the existence of a genuine issue for trial.  <u>See</u> <u>Pfau v. Gilger</u>, 211 F.

---

[126]    <u>See</u> Doc. 107-2, Ex. 72 to Defs.' Mots. for Summ. J., Letter from Pantoja to Duncan Dated Dec. 5, 2011.

App'x 271, 272 (5th Cir. 2006) (unpublished) (stating that summary judgment burden cannot be met with "conclusory statements, speculation, and unsubstantiated assertions").

Stewart also relies on his own testimony that Duncan instructed Doerr not to show Stewart the evidence against him during Doerr's investigation.[127] Stewart has not asserted, however, that he had a right to see the evidence against him during the investigation and before charges were brought such that Duncan's instructions would reflect a retaliatory animus.

Stewart further stated in his declaration that Doerr told him that "he did not agree with what [Duncan] was doing, but that he [Doerr] had been ordered to do it."[128] Stewart urges the court to infer from Doerr's statement both that Duncan was responsible for instigating the investigation into Stewart's activities and that Doerr's will was overridden by Duncan when Duncan appointed Doerr to conduct the investigation. The court declines to make these inferences given the undisputed evidence that the IAM's General Vice President, Pantoja, requested that Duncan assign a General Chairman to investigate Battle's complaints;[129] the absence of evidence that Duncan was behind the three separate complaints made

---

[127]   See Doc. 124-20, Ex. M to Pl.'s Resps. to Defs.' Mots. for Summ. J., Pl.'s Decl. ¶ 4.

[128]   Id. ¶ 3.

[129]   See Doc. 107-2, Ex. 72 to Defs.' Mots. for Summ. J., Letter from Pantoja to Duncan Dated Dec. 5, 2011.

against Stewart; and Stewart's failure to proffer any evidence of Duncan's involvement in Doerr's investigation beyond complying with the IAM's request.   At his deposition, Doerr stated that Duncan "really had no involvement whatsoever with any of the process . . . . I handled it pretty much all myself."[130]

Therefore, Stewart has failed to produce evidence from which a reasonable fact-finder could conclude that a causal link existed between Stewart's protected activity and the filing of Article L charges through Duncan's transference of his alleged retaliatory animus to Doerr.   Accordingly, the court finds that District 19 is entitled to summary judgment on Stewart's retaliation claim.

### 2.   Stewart's Claim Against the IAM

Like District 19, the IAM concedes that Stewart engaged in protected activity by making the complaint to Buffenbarger and filing a charge with the EEOC.   It also concedes that Stewart suffered an adverse employment action though the penalty assessed against him by the trial committee and affirmed by Buffenbarger. The IAM argues that Stewart nonetheless cannot make out a prima

---

[130]    Doc. 102-10, Ex. 10 to Defs.' Mots. for Summ. J., p. 257.  Doerr further explained at his deposition that he spoke with IAM's Pantoja and Siegel about his findings.  Doc. 125-1 Ex. E to Def.'s Reply, Doerr's Dep. pp. 105-06. Doerr stated, "I wanted to show [Pantoja and Siegel] what I found and tell them what I thought and – this is a very serious matter, you know . . . what I was thinking we had to do to fix this on behalf of the members . . . .  Mr. Stewart didn't – didn't think he was doing anything wrong, and – and I believe the members had shown enough evidence to show that he – that he had.  So I felt Article L charges were probably going to be the only way we could go.  And after I discussed it with my superior, I – I decided to file the Article L charges." Id. p. 106.  Doerr then clarified that his "superior" was Pantoja, not Duncan. Id.

facie case of retaliation against it because the facts do not show a causal connection between Stewart's complaint or EEOC charge and the reprimand issued by the trial committee.

The trial committee conducted its preliminary investigation on July 16 and 17, 2012, after Doerr had filed Article L charges against Stewart on April 4, 2012.  On March 22, 2013, McSwain informed Stewart that his trial would be held on May 22, 2013.  The trial was later postponed until June 26, 2013.  The trial was conducted on that day and, after a recess, on July 9, 2013, when it concluded.  The trial committee issued its report finding Stewart guilty on August 12, 2013.

Stewart contends that a causal connection is established by what he contends were departures from typical policies and procedures by the trial committee.  However, just as Stewart has failed to introduce evidence that Doerr was aware of his complaint and EEOC charge, Stewart has introduced no evidence suggesting that any member of the trial committee knew that Stewart had engaged in protected activities.  Without such evidence, it would be speculative for a trier of fact to infer that the unfavorable ruling by the committee was in retaliation for these protected activities.  The court cannot impute knowledge to the trial committee members on the basis of procedural irregularities alone.

Stewart offers no additional evidence of a causal connection between his complaint and EEOC charge and the reprimand being

41

issued by the IAM.  As Stewart has not produced evidence capable of establishing this causal link, he has failed to establish a prima facie case.  Accordingly, the court finds that the IAM is entitled to summary judgment on Stewart's retaliation claim.

## C.    **The IAM and District 19's Counterclaims**

The IAM and District 19 filed counterclaims against Stewart, alleging violations of LMDRA Section 501, which establishes fiduciary duties owed by a labor organization's officers to the organization and its members, civil conspiracy, breach of fiduciary duty, unjust enrichment, money had and received, tortious interference with the performance of an existing contractual relationship, and fraud.[131]  These claims arise out of the IAM and District 19's allegations that Stewart misappropriated vending machine profits that were owed to union members; maintained a patronage system through which he manipulated the distribution of overtime opportunities and the resolution of union member grievances against Union Pacific; and abused his position to improperly hold a higher paying job that should have been assigned to a more senior employee.[132]

Stewart contends that the IAM and District 19 do not have associational standing to bring these claims and, alternatively, that the IAM and District 19 have not proffered sufficient evidence

---

[131]    See Doc. 16, Defs.' Ans. & Countercl.

[132]    See Doc. 119, Defs.' Resp. to Pl.'s Am. Mot. to Dismiss p. 2.

to raise a fact issue as to Stewart's liability.

An association may have standing both "in its own right to seek judicial relief from injury to itself," and, "even in the absence of injury to itself, . . . as the representative of its members." Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd., 627 F.3d 547, 550 (5th Cir. 2010) (alterations and internal quotation marks omitted) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)).

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. (alterations omitted) (quoting Hunt v. Wash. St. Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

The first two prongs of Hunt reflect constitutional requirements, while the third component is solely prudential. Id. The third component focuses on "matters of administrative convenience and efficiency." United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (1996). "Courts assess this prong by examining both the relief requested and the claims asserted." Ass'n of Am. Physicians & Surgeons, 627 F.3d at 551. The Fifth Circuit has instructed that this prudential limitation does not prohibit associational standing in all cases where it is necessary to take evidence from individual members of

43

an association.  Rather, in such a situation, an association will have standing so long as "a discrete pattern of conduct or contract breach" has been "alleged to have applied equally against a large number of association members," such that "[p]roving the illegality of the pattern or breach of contract require[s] some evidence from members, but once proved as to some, the violations [will] be proved as to all."  Ass'n of Am. Physicians & Surgeons, 627 F.3d at 552.

### 1.  Unjust Enrichment, Money Had and Received, and Fraud Claims

The IAM and District 19's claims for unjust enrichment and money had and received arise out their allegations that Stewart took advantage of his position as a union representative to wrongly secure benefits for himself in the form of his road machinist salary.  Their claim for fraud is based on allegations that union members relied on misrepresentations by Stewart and suffered injuries in the form of improper distribution of benefits such as Stewart's salary and overtime.

These claims by the IAM and District 19 are neither common to the entire union membership, nor shared by the allegedly affected members to an equal degree.  Individualized proof would be required to determine which members were entitled to hold Stewart's position and which members were wrongfully denied overtime and to what extent.  See Self-Ins. Inst. Of Am., Inc. v. Korioth, 53 F.3d 694, 696 (5th Cir. 1995) (association challenging tax had standing to

seek injunctive relief but could not obtain refunds because of necessity of determining eligibility and amount of individual refunds).  Thus, the court finds that the IAM and District 19 do not have associational standing to bring claims for unjust enrichment, money had and received, and fraud because these claims would impermissibly require the participation of individual union members.

    **2.   Tortious Interference Claim**

The IAM and District 19 allege that Stewart tortiously interfered with the performance of the collective-bargaining contract between Union Pacific and the IAM by holding the road machinist position and manipulating the distribution of overtime and processing of union member grievances.  The IAM and District 19 bring this claim in their own right, not on behalf of their members, as they allege that Stewart interfered with a contract entered into by the union.  Thus, there is no issue of associational standing on this claim.  Stewart argues that he is entitled to summary judgment regardless, contending that the IAM and District 19 have failed to raise a fact issue as to Stewart's liability.

The elements of tortious interference with a contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual

damages or loss." <u>Prudential Ins. Co. of Am. V. Fin. Review</u> <u>Servs.</u>, Inc., 29 S.W.3d 74, 77 (Tex. 2000). While the IAM and District 19 aver that Stewart interfered with the collective-bargaining agreement, they have introduced no evidence of this agreement or its terms in support of their claim. Moreover, in order to show willful and intentional interference, a plaintiff must show that the defendant took an active part in persuading a party to breach its contract. <u>Davis v. HydPro, Inc.</u>, 839 S.W.2d 137, 139 (Tex. App.-Eastland 1992, writ denied). The IAM and District 19 have failed to allege that Stewart was responsible for persuading anyone to breach the collective bargaining agreement. Therefore, the court concludes that the evidence in the record does not raise a fact issue material to determining whether Stewart tortiously interfered with the collective-bargaining agreement.

   3.  **Section 501(a) Claim**

   Section 501(a) imposes fiduciary duties on a union's "officers, agents, shop stewards, and other representatives." 29 U.S.C. § 501(a). Specifically, the Act provides that those individuals "occupy positions of trust in relation to such organization and its members as a group" and requires that they hold and manage the union's money and property for the sole benefit of the organization, refrain from self-dealing, and remain loyal to the organization. <u>Id.</u> This court previously held that Section 501

creates an implied cause of action for unions.[133]

The IAM and District 19 allege that Stewart violated Section 501(a) by improperly holding the road machinist position, manipulating the distribution of overtime, and misappropriating profits from a vending machine.

Stewart argues that the IAM and District 19 lack standing to sue under the statute because establishing their injuries would require individualized proof from their members. The Supreme Court has made clear, however, that because this component of the Hunt test is "judicially fashioned and prudentially imposed, there is no question that Congress may abrogate the impediment." United Food & Comm. Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 558 (1996). Because, as this court previously held, Section 501 creates a cause of action for unions, the IAM and District 19's standing cannot be challenged on this basis.

Stewart argues that, even if the IAM and District 19 have standing to bring this claim, they have failed to raise a fact issue as to Stewart's liability. Section 501(a) imposes three fiduciary duties on union officials:

> (1) to hold the union's money and property solely for the benefit of the union and its members and to manage, invest, and expend the same in accordance with the union constitution and bylaws; (2) to refrain from dealing with the union as an adverse party and from holding or acquiring any pecuniary or personal interests which conflict with the interests of the union; and (3) to

---

[133]   See Doc. 99, Mem. & Recommendation Dated Apr. 10, 2014.

>       account to the union for any profit received by the
>       official in connection with transactions conducted by him
>       on behalf of the union.

Hoffman, 362 F.3d at 316 (citing Section 501(a)).

The Fifth Circuit has noted that "the fiduciary obligations imposed are primarily pecuniary in nature–that is, having to do with the custody, control, and use of a union's money and its financial interests or property and the conduct of union officials in relation thereto." Id. Accordingly, "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA." Id. at 322. Rather, "most of these matters are the sort of 'internal union grievances' properly left to be worked out via union democratic processes . . . and not by a federal court sitting as a sort of 'super-review board.'" Id. (citing United Food & Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l Union, 301 F.3d 468, 475 (6th Cir. 2002)).

Hoffman involved allegations that union officers were "derelict in the performance of their employment obligations" and that, by "accepting their salaries while not working full workweeks, they breached § 501(a) duties by misusing union funds for their personal benefit." Id. The court concluded that "the statute cannot plausibly read to give rise to a cause of action against a union officer whenever there is a disagreement concerning his work schedule or work ethic." Id.

The IAM and District 19 claim that Stewart misappropriated profits from a vending machine that was "employee-owned."[134] Profits from the vending machine were distributed to the employees who contributed to funding its operation until, at some point during Stewart's term as Local Chairman, Union Pacific took the position that the distributions violated a company policy.[135] The affected employees and Union Pacific then came to an agreement that the vending machine profits would instead be donated to a charity.[136] Stewart was responsible for collecting money from the machine and donating the profits, a task that he delegated to Harris.[137] The IAM and District 19 argue that, because Stewart has not produced documentation of any charitable donation, a fact issue exists as to his liability under Section 501(a) arising out misappropriation of the vending machine profits. However, it is undisputed that the vending machine was "employee-owned" and not the property of the IAM or District 19. Accordingly, any allegation regarding the misappropriation of vending machine profits does not implicate the IAM or District 19's "money and its financial interests or property." Hoffman, 362 F.3d at 316.

The IAM and District 19 next assert that Stewart's improperly

---

[134]   Doc. 119, Defs.' Resp. to Pl.'s Am. Mot. for Summ. J., p. 16.

[135]   See Doc. 119-7, Ex. 5 to Defs.' Resp. to Pl.'s Am. Mot. for Summ. J., Harris's Dep. p. 79.

[136]   Id.

[137]   Id.

holding the road machinist position and manipulating the distribution of overtime was "to the financial detriment of his coworkers."[138]   However, evidence that members of the union were harmed by Stewart's activities is insufficient to raise a fact issue as to his liability under the statute.   The IAM and District 19 must proffer evidence of wrongdoing related to "custody, control, [or] use" of the IAM or District 19's "money and its financial interests or property."   Hoffman, 362 F.3d at 316.   The evidence proffered by the IAM and District 19 does not implicate their pecuniary interests and, thus, does not raise a fact issue as to Stewart's liability under Section 501(a).   Accordingly, Stewart is entitled to summary judgment on this claim.

### 4.   Breach of Fiduciary Duty Claim

The elements of a breach of fiduciary duty claim under Texas law are: "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach."   Lundy v. Mason, 260 S.W.3d 482, 501 (Tex. App.-Houston [14th Dist.] 2008, pet. denied).

As the IAM and District 19 bring this claim in their own right, they need not establish associational standing.   Stewart does not contest that, as a Local Chairman, he owed a fiduciary

---

[138]   Doc. 119, Defs.' Resp. to Pl.'s Am. Mot. for Summ. J., p. 11.

duty to the union.  The IAM and District 19 contend that Stewart breached this duty by improperly holding the road machinist position.  Doerr testified at his deposition that Stewart told him that Union Pacific had assigned him to a full-time road machinist position, "a bid position that had a much higher rate of pay" than most machinist positions.[139]  According to Doerr, Stewart admitted that he did not bid for the road machinist job.[140]  Doerr further testified that this situation was "highly inappropriate."[141]  This testimony raises a fact issue regarding the IAM and District 19's claim that Stewart engaged in self-dealing with Union Pacific in breach of his fiduciary duty to the IAM, District 19, and the local union membership as a whole.  Accordingly, Stewart is not entitled to summary judgment on this claim.

### 5.   Civil Conspiracy Claim

The IAM and District 19 allege that Stewart and Hall entered into a conspiracy whereby Hall suppressed complaints against Stewart in order to allow Stewart to breach his fiduciary duty to the union.  An actionable civil conspiracy is a combination by "two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  <u>Cotton v. Weatherford Bancshares, Inc.</u>, 187 S.W.3d 687, 701 (Tex. App.–Fort Worth 2006,

---

[139]   <u>See</u> Doc. 119-12, Ex. 10 to Defs.' Resp. to Pl.'s Am. Mot. for Summ. J., Doerr's Dep. pp. 165-67.

[140]

[141]

51

pet. denied).   The essential elements are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."   Id.

Liability for conspiracy may be established by "proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful overt acts were committed in furtherance of a common design, intention, or purpose of the alleged conspirators."   In re Enron Corp. Securities, Derivative & ERISA Litigation, 623 F. Supp. 2d 798, 813 (S.D. Tex. 2009) (quoting Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 581-82 (Tex. 1963)).   Circumstantial evidence, however, "must constitute more than mere suspicion."   Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269 (Tex. 1995).   "Where the circumstantial evidence is meager, if circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred."   In re Enron Corp. Securities, Derivative & ERISA Litig., 623 F. Supp. 2d 798, 813 (S.D. Tex. 2009) (internal quotation marks omitted).

As evidence of Stewart and Hall's alleged agreement, the IAM and District 19 rely solely on testimony that Hall failed to respond to complaints made regarding Stewart.  For example, Emanuel testified that he complained to Hall about Stewart's having the road machinist position, and Hall "told him that what [Stewart] was

doing was proper."[142]   The IAM and District 19 also point to an email sent to Hall by an IAM representative referencing complaints about job postings and grievances from Local 2198 members and proposing that she and Hall meet to discuss these concerns.[143]

While these complaints may tend to show dereliction of duty on the part of Hall, they are not sufficient to raise a fact issue regarding an agreement between Hall and Stewart to allow Stewart to breach his fiduciary duties.   Accordingly, Stewart is entitled to summary judgment on this claim.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that IAM's motion (Doc. 101) be **GRANTED**, District 19's motion (Doc. 100) be **GRANTED**, and Stewart's amended motion for summary judgment (Doc. 114) be **GRANTED** as to the IAM and District 19's claims under Section 501 and for civil conspiracy, unjust enrichment, money had and received, tortious interference, and fraud, and **DENIED** as to the IAM and District 19's claim for breach of fiduciary duty.   The court further **DENIES** Stewart's motion to strike (Doc. 121).

Should this memorandum and recommendation be adopted, the IAM and District 19's claim against Hall for civil conspiracy should also be dismissed.   Accordingly, there would remain for trial

---

[142]   Doc. 124-19, Ex. L to Pl.'s Resps. to Defs.' Mots. for Summ. J., Emanuel's Decl. ¶ 3.

[143]   Doc. 119-24, Ex. 22 to Defs.' Resp. to Pl.'s Am. Mot. for Summ. J., Email from D. Cervantes to Hall Dated June 18, 2010 p. 22.

Stewart's discrimination claim against District 19 arising from Stewart's failure to be appointed as General Chairman and District 19 and the IAM's claim against Stewart for breach of fiduciary duty.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 14th day of August, 2014.


_____
U.S. MAGISTRATE JUDGE